Good morning, your honors. My name is Barney Gibbon, and I represent the appellant Matt Martorello. The underlying case which brings us to this court again today involves certain consumer loans that this court already determined were made on the reservation by arms of the Lac View Desert Band of Lake Superior Chippewa Indians under the Breakthrough Factors. By continuing the case, the appellees impermissibly seek to extend federally preempted state regulatory laws to Mr. Martorello, given that those laws may not infringe on the LVD tribe because they seek to regulate their making of loans on their reservation. Over three years ago, this court reviewed a very substantial record and adjudicated the servicing agreements, the loan and security agreements, and promissory note, and the other corporate documents at issue in this case. It made several conclusions, including that the real party in interest, as this court typically calls it, or the rent-a-tribe, as the appellees like to recharacterize it, is that Big Picture Loans, which is controlled by the tribe and managed day-to-day by certain members of its tribal council, and directed the trial court to dismiss Big Picture Loans and another entity that is the arm of the tribe, Ascension Technologies. In issuing this mandate, the court sought to protect the tribe's ability to govern itself according to its own laws. Since the last opinion in this case, am I correct that the plaintiffs have entered into a settlement with Big Picture and Ascension? That's correct, Your Honor. The settlement, however, came many, many months after the mandate, and there were other matters that were heard subsequent to the mandate that should never have been heard. As far as those plaintiffs are concerned, they have no further claims against either Big Picture or Ascension? That's correct. When the mandate went to the district court, what took so long? Why didn't the district court follow what we said? We don't know. That's the problem. We had urged the district court to do something, and in fact, it then held additional hearings. We don't know why the district court didn't issue the mandate, and that, in fact, was raised in our objection to the settlement, which was approved over our objection. And further, the settlement requires the tribal entities to continue making loans from the very agreements, which they are now seeking to call useless and hold my client liable for. Mr. Given, I'm sorry. You said that the settlement was approved over your objection? Correct. How could that be? Don't you have to consent to a settlement agreement? Apparently not, according to Judge Payne. So it was a one-sided… Yes. We weren't consulted. We didn't consent to it. We weren't a party to the settlement, but it absolutely affected our rights. We were the co-defendants. It should never have been signed. Oh, I get it. I'm sorry. But certainly the entities, Ascension and Big Picture, agreed to the settlement. Right. The tribal entities agreed to the settlement. Okay. Sorry. I misunderstood. No. But in terms of the court not going forward with what we told the court to do, clearly. Yes. Plain English. It didn't do it. Correct. It didn't do it until almost seven months after the mandate, and it only did in connection with the settlement. So you knew what your remedy was, right? Well, our remedy was to object to the settlement. No, it wasn't. Our remedy was to file for mandamus. Right. And I was not counsel at that time, and I agree. Mandamus would have been an appropriate remedy as well. I don't disagree with that. And the court scheduled evidentiary hearings, right? Not on the settlement. No, before the settlement. I mean, before the settlement. It did. It did. Well, who were the parties to that? To the settlement? To the evidentiary hearings. Well, that would have been my client, the tribes, you know, affiliated entities. It took evidence and then said, I'm incorporating this into the record. Making a part of the record. Did it not? It did. It did. In those hearings. There were a couple of different hearings that took place after the mandate and before the settlement was approved. Right. Well, we're big picture on ascension part of those hearings. They were. And it should have been out of the case by the time. Correct. Which we clearly said. Correct. But again, I didn't represent and have never represented the tribal entities.  Thank you, Your Honors. None of the contracts that would issue in the prior hearing have changed, and there was no basis to readjudicate those same contracts. In fact, the questions already resolved pertain not to Mr. Martorello, but to the tribe. It is not his sovereignty to rent out, and he did not pass the more than 264 resolutions of tribal. Related to how their lending business would work. Mr. Martorello has virtually no information regarding the borrowers and never had any contact with the borrowers. The district court says its opinion that a number of the factual bases upon which its prior opinion and our prior opinion based. Or obtained for lack of a better word fraud. And Your Honor, we absolutely disagree with that. That was 1 of the hearings. It was a misrepresentation hearing that that we disagree with those findings completely. And in fact, matters relating to that fraud are right now. The subject of a pending motion back in the district court, because they all revolve around the declaration of a Ms. Who gave testimony in her declaration drafted by her counsel that was completely inconsistent with her deposition. Does an appellate court do if its prior decision is later shown to be based on misrepresentation and fraud? Because that that decision itself also will be. Obviously, we're here on an interlocutory appeal. That would be the subject of question. I asked was more generic. I think, again, the court can look at the fact. I think, given the fact that even if you're applying a clearly erroneous standard, the judge was clearly erroneous. He ignored all of the breakthrough factors. He took evidence in that he shouldn't have. We think it was completely in error. If you look at how the judge got there and the whole basis of the case, frankly, from day 1, the way the rulings have gone down. There simply was not evidence of fraud. And the finding by the judge, we believe, was clearly erroneous based on his failure to apply the breakthrough factors. He just substituted a fraud finding instead. Oh, there's misrepresentation. But he didn't apply the breakthrough factors to the analysis. In fact, I'm not correct. The 28 J letter came before we were ruled in this case. Some of the information alleging misrepresentation wasn't filed before our opinion issue. Correct. And we could have done that ourselves. Pardon? I said we could have done that ourselves if we felt that was that important. But it was never raised. My understanding, again, I didn't do the initial appeal. My understanding, that issue was not raised before this court. The first timing could have been. Right. Exactly. What am I pointing to? To judge AZ's question to you, and that is this court could have done something because some of those facts were alleged before our opinion issued. But my understanding is that the appellees in this case, the plaintiffs in the underlying case, never raised that issue to this court's attention. Exactly. Right. So it wasn't something we don't have like raised judicata or collateral stop on the fraud issue. It was never raised to this court in the first instance. That seems like a case where we have the appeal, and then it goes back to district court to try to case again, in part, because these issues could have been raised. In other words, there would be no issue preclusion at all if you go back and you can do it in district court. Correct, but they weren't raised before this court the first time, and that's one of the additional problems. I don't agree with you, but let's go ahead. Mr. Given, can I ask a follow-up with respect to this mandate issue? So I think you get that there's concern about the district court's sort of not timely enforcing the mandate of the court. But even if the district court had immediately dismissed the entities, there would have been nothing to prevent the court from proceeding with respect to the remaining defendants, right? That's where we disagree, because then you have an impermissible party problem. Because, again, what they're basically asking the court to do here is say, we're co-defendants in the trial case together. And the only way liability gets down to my client is if the loans that the tribe made on its own reservation were illegal under Virginia state law. In other words, we're like secondary defendants, so to speak, on a waterfall basis. But when the tribe's out, they're an indispensable party, which is one of our objections to the settlement. And now we're left to essentially defend the tribal lending practice. That's the problem. And we've raised that issue with the court, and the court disagreed. But I think clearly the tribe was an indispensable party once they were dismissed for us to go forward. And as the court's probably aware, it's extremely difficult to get discovery from the tribe. That's a whole other process through the tribal council. But we weren't a party to the settlement. And, again, we certainly were negatively affected by the settlement. And that's a long answer, and I apologize, but it really then goes to indispensable party. But are you saying, then, that the district court could not have proceeded against Mr. Martorello without keeping the entities in the litigation? Yes, that's our position. Well, that suggests that's okay. All right, go ahead. It was raised in connection with the settlement and overruled. All our objections were overruled. And, again, one of the other issues is that an argument that you've made on brief here? We didn't raise the indispensable party issue. We were really focusing on the mandate. I was simply trying to answer the court's question. Yes. But I want to focus, Your Honors, in response to these questions. They're also asking this panel to ignore this court's rulings. There's three specific conclusions that I think are important that they're now asking to be essentially tossed out with the bathwater. One was that the tribe created Big Picture and Ascension under tribal law for its own benefit and indeed served the essential self-government needs. That Big Picture is the lender, and Ascension provided the services. And, more importantly, that the tribe controlled and owned Big Picture and rejected that the servicing agreements that my client had entered into constituted control over the tribe. And that's, again, why all this is one, unfortunately, interrelated matter is we never had control over the day-to-day lending operations. If we don't have control over the day-to-day lending operations, we cannot be liable for any sort of tort with respect to the consumer loans that were being made. So, again, unless this court finds a reason to vacate the prior findings, that was this court's, not Judge Payne's. That was this court that made those findings, and we're asking that those be upheld, reinstated. And I see I'm almost out of time on my initial. I can answer any questions the panel may have, and I'll have rebuttal time. Yeah, sure. Thank you. Thank you. Wessler. Thank you. May it please the Court, Matthew Wessler for the Appleviews. I think it might make sense to just pick up on maybe where Judge Diaz, you just left off, which was a question about what practical impact this several-month delay in dismissing out the tribal defendants had on the rest of the proceedings in this case. Because, Judge Diaz, I think you're right, which is whether that dismissal happened at two weeks after the mandate or three months after the mandate, it doesn't matter for purposes of this appeal. Because regardless of when those tribal defendants were dismissed out of the case consistent with the court's remand, the case absolutely could have and would have proceeded against Mr. Martorello alone. The items that were presented in the district court that Judge Payne made his findings on that we have here, what was the prohibition on presenting those in the first trial? I'm sorry. Why weren't those presented earlier? The issues? Is that what your question is? Why the issues weren't presented? The facts. The facts, yes. Yes. Yes. She made the subsequent findings. Correct. My question is, why was that evidence presented at that time and not earlier? Sure. Yep. So the discovery that led to the misrepresentation hearing didn't come out until later, but it didn't come out in this case. There were multiple other proceedings pending while this case was up on appeal before this court the first time against the tribe, the big picture, Ascension, and the individual tribal defendants, not related to this proceeding. And in those cases, additional discovery came out that made clear that some of the initial representations, statements made by Mr. Martorello about his control over these companies were false. And it was only after that discovery and the related proceedings came out that Judge Payne reopened the hearing, reopened the proceeding to allow for this additional evidentiary hearing. Under that theory, then, that would turn finality on its head. You'll never have an end to the case. If you—we make a ruling in an appellate court with the record before us, and then in some other jurisdiction, someplace else in America, there's a discovery going on. Oh, well, you know what? We need to now upgrade this and go on the remand rather than follow what we said on this court's clear remand, and then you get a chance to put that into the record. And then we say, oh, we got a new case here. Because who asked for the evidentiary hearing? The plaintiffs asked for the evidentiary hearing. You asked for it? Yes, Your Honor. And you knew that the parties that should have been dismissed should have been dismissed at the time, should have been out of the case, right? We're going to be out of the case, yes. But you did it purposely to try to keep them in, didn't you? Oh, I don't think so at all, and I don't think the record bears that out at all. So you're saying that everything that came out was only as to the defendant here, the appellate here today? Yes, I mean, the evidence was focused on Mr. Martorelli's role in the creation and then operation of this lending enterprise. It doesn't have anything to do with the tribe. I do want to… You have us, as an officer of the court, can you tell us the date of the discovery in those other cases? I can, Your Honor. I'm happy to. You should, because you're representing that that was the basis for it, and you make an allegation like this, an officer of the court. We'd be happy to provide the court. I'd be happy to provide… We'd be happy to provide the date, because this is very odd that we're set as an appellate court, and then you come back to the district court and say, oh, I found some discovery someplace else. That's why our mandate was not followed for seven months. Right, so if I could make a couple points about the mandate, because I do think there's a difference between what is actually the effect of the mandate. I don't agree that the mandate controls or freezes into place the facts that the court took as a given when it issued its legal ruling in this appeal. This court's decision in Cortel, for instance, I think draws a very clear distinction between the legal issue that a court decides on appeal and the facts that it relies on. The facts can change. Just like if the court were reviewing a summary judgment motion, it made some legal conclusions, the facts after that decision could nevertheless change, and that would not violate the mandate rule in any way. What we have here is, I think, the same thing. The only question that this court decided, and the defendants themselves made this clear in their briefing to this court in the first appeal, as did we, was whether arm-of-the-tribe sovereign immunity applies to these two tribal entities. That's the only question, and that was a legal question. But this court took, as a given, it accepted the district court findings of fact for purposes of applying those facts to a legal inquiry, which is this breakthrough factor framework. But that doesn't mean that all of a sudden, whatever facts the district court found at the beginning, or which this court accepted as true for purposes of its decision on a legal question, it doesn't mean that those facts are frozen in place forever in time for the rest of the proceeding. This case wasn't final. It wasn't a situation where there was a final judgment and all of a sudden, someone's invoking Rule 60 to come back and attempt to re-litigate the case. Mr. Margarello was in the case from the beginning. He's in the case now, and nothing has changed with respect to him, other than that the district court held additional evidentiary hearings to determine exactly what was mistaken. Your client got the advantage of that, didn't it, for the settlement? I got a settlement against somebody who really should have been dismissed from the case immediately. Is that right? No, I don't think that's right, Your Honor. Didn't you get a settlement? There was a settlement, absolutely. You don't think that was favorable to your client? I think a settlement is favorable to both sides of the equation. Both sides had already won. I don't agree with that, Your Honor. Mr. Freeman, you don't agree that we said in the mandate the case is dismissed against them and they didn't win? I understand. Answer that question. Are you telling me they didn't win? They won that issue in this case, Your Honor. That issue? What was this an issue, or was it they were dismissed as a party? Which one? They were dismissed as a party. Tell me why that is not a win. That's plain common sense, not law, common sense. Tell me why they did not win when they were dismissed as a party. That's what I want you to answer that question. They were involved in other proceedings. Where? In the federal court in Virginia, multiple other proceedings. In this case? No, two separate cases. You want us to litigate discovery over here, another case pending? I'm talking about this case. They won. Yes, this case. And they were entitled to have the mandate issue and dismissed, correct? Yes. And seven months later, you got a settlement. Yes. Go ahead. Thank you. If I could just return back to what I think is the key question for this panel in this case, which is regardless of the delay that may have occurred between when this court issued its decision and when those defendants were dismissed out, it does not affect what is at issue in this appeal right now. The only question is whether the class certification order that the district court issued is whether it abused its discretion in some way, whether there were predominance issues in the case that affect its analysis of the Rule 23 factors, or whether Mr. Martorell can enforce one of these tribal arbitration contracts. Those are the issues that are in front of this court today. You heard Mr. Martorell's counsel say in response to your question, Judge Diaz, what would have changed? And he said, well, there would have been indispensable parties. Well, they made that argument and they lost, and they have not appealed that issue. So right now, what you've got is a class certification order in which the district court went through the factors thoroughly, and there is nothing about that decision. Is it your view that the class certification order is completely divorced from the district court called its misrepresentation order, that the findings in that order are unnecessary for the class certification? That's correct, Your Honor. There are only two grounds other than the tribal arbitration contract issue, which we haven't talked about. But if you set that aside, there are only two grounds that Mr. Martorell argues should have defeated class certification in this case. Both of them are related to predominance, and they relate to his role in the case. He argues that he had a decreased role over time, and he argues that there's no way to trace the money that came through this enterprise to him. That's it. Those are the two issues, other than arguing, again, that the contract allows him to avoid class actions. But even if you accept everything that he says today, that he didn't have as big a role in this or he wasn't involved in its creation at the beginning, neither of those two issues affects predominance. The focus of Rule 23 predominance inquiry are in the elements of the plaintiff's claims, which are, in this case, RICO claims and state law usury claims. And nothing about a defendant's role, whether that in fact leads to liability or not, affects what the district court said about how all of the elements in this case are common to the class. And more than that, even if you think that there is some predominance issue or there may be a reason why you should accept what Mr. Martorell's counsel has said about the—I'm sorry, my time seems to have— You wait. You have time. I don't see it. I apologize. The clock doesn't seem to be on. It may be to your— Oh, I'm sorry. My apologies. My apologies. Even if you accept that his theory about the class here, that he had a decreased role over time, and or you accept that there is a traceability issue with respect to how you can apportion liability, those two issues are themselves common to the class. So they don't at all impact the district court's predominance analysis. So if we agreed with you that class certification was appropriate, proceeding on the merits would go forward with the factual basis that was in the district court's second opinion. Is that right? Yes, I think that would be right. And at some point there would be an appeal, I assume, unless there's another settlement, and the issue would come back here, would it not, on the mandate? It might, Your Honor. If a verdict on the merits was based in some part on that evidence. I think that would be right, Your Honor. So in the mandate sphere, appellate courts would usually be bound, and obviously the district court would be bound. But there are exceptions. One would be where there's new evidence that wasn't previously obtainable with the exercise of due diligence. Or the other would be where there is a blatant error that would amount to serious injustice. So which do you say applies in this case? I think it would be new evidence. If I could just have a little 30 seconds to provide some context to that answer, though, because I just I want to emphasize that the mandate here did not find facts. It accepted the facts as the district court found them in the original set of proceedings in this case. And so I don't think under this court's mandate rule doctrine, which is just a specialized version of law of the case, that it could operate to bind a district court in future proceedings based on the record as it existed at the time of its initial decision. That might be different if this court's decision in some way found facts or rejected a series of factual findings by the district court. But that did not happen here. The only question at issue in front of this court in the first proceeding was a legal one, which is just whether arm of the tribe immunity applied to these two entities. But that has nothing to do at all with what happened later. Even if you, Judge Gregory, agree that there was too much of a delay that led to the dismissal of the tribe's companies, it doesn't freeze in place for all time the way the record looked when this court first decided its case. If that were true, then any decision on summary judgment or even an earlier one, interlocutory that had a factual section in the opinion would restrict a district court's ability to conduct future findings. Now, if you think, Judge Agee, as you suggested, that there was some problem with the way that I understand. But if any of the on the panel think that that would be true, there is going to be a later point in this process in which the defendant, Mr. Motorola, will have an opportunity to make that argument. But the only thing at issue in front of this court now. The second district court proceeding, was the argument raised below an objection to additional findings of fact that there had not been an exercise of due diligence? Was that argued and heard? I don't believe so. But I could be mistaken. My friend is nodding his head. I'm sure he can clarify. I was not involved in the proceedings below. But it may have been true that there was an objection from someone in the proceeding, in which case they could either have preserved that objection and raise it later or they didn't raise it here and it's waived. But it isn't in front of this court on this record, on the order that is the subject of this appeal. And I think that's significant because as a matter of appellate jurisdiction, this court is limited to reviewing the only order that is in front of the court. And that order does not take into account in any meaningful way, any of the misrepresentations that the district court identified as being made by Mr. Martorello. It asked only whether the Rule 23 factors had been met. And there has been almost no effort by Mr. Martorello to contest those conclusions, other than the two grounds that I identified earlier. The first, which was this idea that traceability can somehow affect predominance. There's no authority at all, and Mr. Martorello has cited none, to support this idea that you actually have to trace dollars anywhere or that it can affect predominance under a district court's Rule 23B analysis. And his argument that he had a decreased role over time, again, which was partly the subject of the misrepresentation hearing. But even if you accept everything that he's saying is the correct way to understand the facts, which I think would be incorrect based on the clear error standard, it doesn't affect predominance because it's first an issue that is capable of being resolved on a class-wide basis. And it's about his liability, not about the elements of the claim. Mr. Wessler, of course, we don't even get to this class action analysis if we find that the loan agreement is, in fact, enforceable. And so I think we should probably talk about that because it strikes me that this agreement falls somewhere in the middle between those agreements that we have found to be blatantly unenforceable and an agreement that at least one district court suggested might be enforceable because it made more than a passing nod to the applicability of federal law. So why isn't this agreement closer to that than the others? Sure. So a couple of responses to that, Judge Diaz. First, I think this agreement collectively is worse than several of the other contracts that this court has invalidated, and I'll explain why. If you look here, the alternative dispute resolution system that is created by the contract. Now, just to step back for one second, the question in all of these cases is whether the choice of law clause that selects tribal law and the choice of forum clause, which selects some version of arbitration together in tandem, creates a prospective waiver that prevents a borrower from effectively vindicating their rights. The alternative dispute resolution system that this contract creates, unlike all of the others in Hayes and Gingras and Haines and Hengel, it completely eliminates any AAA or JAMS participation in the process. In all of those other ones, at least the contract said you get to go to AAA or JAMS to resolve your disputes. Here, it's an entirely insulated process created by the tribe. It does not permit the appointment of any neutral outside arbitrator, which those other contracts did. Instead, it permits the tribe to select a decision maker. It doesn't put any guidelines or restrictions on who that can be. It could be the sibling of someone who works for one of these companies. And it mandates that that system is the sole and exclusive method for resolving all the disputes that a borrower may have. Now, you asked a question about this language that appears to reference applicable federal laws in the contract. The contract in Haines and in Sequoia both included a similar phrase in the contracts. And what this court said was that's insufficient to somehow get you out of this box that these contracts place you in. It's insufficient for several reasons. The first is it doesn't specify what applicable federal law ever means. It is also- It's all, isn't it? I don't think so. And the reason it doesn't- Did it exclude any? Yes. So what it says- What kind of law did it exclude? So if you go to the code, which is the basis for any claim under this contract, the code includes references to a number of federal laws. So it's applicable federal law, and the code says here are the laws that apply. But what's missing from that set of laws are the laws that are at issue in this case. So this is the same that was true in Haines and Sequoia. Do you think that's intended to be exclusive? Yes, and I'll tell you why. Because in the contract, elsewhere in the contract, no different from any of these others, the language says that all the disputes will be, and I'm quoting, subject solely and exclusively to tribal law. And so that language, as this court has held, as the Second Circuit has held, as the Third Circuit has held, trumps any effort to try to avoid an interpretation that would be irreconcilable between those two clauses to somehow breathe life into this idea that all federal laws are now somehow back on the table. They've never been back on the table. They're written in the contract. They're written in the contract. It says all applicable law. It doesn't say all applicable law, Your Honor. What does it say? It says, I can get you the actual language. It says, we'll be governed by the laws, I'm paraphrasing because the tribe's name is long, we'll be governed by the laws of the tribe, including but not limited to the code as well as applicable law. And so what courts have said, that as well as applicable law, as well as applicable federal law, I'm sorry. Thank you. I'm sorry, I missed the key word. You did, you did. Yes. And I see I'm out of time. Can I respond? Please respond. So that language was also in the contract at issue in Sequoyah and Haines. And it was also in the contract at issue in the Second Circuit's decision in Gingras. And what all of the courts have said in that context is it's not actually clear what applicable law means without further definition. But all of these contracts require that your claims are those that are provided available to you under the code. And the code invokes the relevant federal laws that apply. And the laws that are at issue in this case, just like the laws that were at issue in Haines and Hengel and Gingras, they are not included in the code's invocation of the relevant laws. And so the absence of the specific laws that a borrower is seeking to pursue, the absence of those laws in the code means that the contract cannot be interpreted to somehow permit a borrower to pursue any or every federal statutory cause of action that they have. And of course, because it seems like this applies a lot when it's a tribal type loaning, but all other arbitration agreements you're saying that occur all in this country every day, that they're wrong if they don't list every specific law that applies to it. They can't just say all laws in the United States are federal law. They held to that standard too? Judge Gregory, they don't do that. No, they don't do it. Why should they do it here? No, they don't do it for a very specific reason, which is because that would waive their sovereign immunity right. They can't accept that all federal laws would apply to them or in a proceeding because they assert that they are immune from any claim brought against them under any law that they haven't either themselves waived their sovereign immunity for or which Congress has waived their sovereign immunity. That's why these contracts have created this problem. The sovereignty has been upheld by the courts, right? The sovereignty has, Your Honor, but not the use of that sovereignty to waive borrower's rights under the contract. And so those are two different things. Someone who is legitimately operating as part of a tribe is entitled to sovereign immunity, but that doesn't mean that a contract that deploys that sovereign immunity, as this court in Hays put it, to surreptitiously waive borrower's rights, even against non-tribal members, which is what we've got here, is somehow enforceable under either the Federal Arbitration Act or as a matter of public policy. I see that my time has expired unless the court has any further questions. I don't. Thank you. Thank you, Mr. Schlesinger. I'm going to lean over this way a little bit. I apologize because I've got notes and they relate directly. I think the court hit the nail on the head. This is a different circumstance because it was the application of tribal law and all applicable federal law. And in fact, the tribal dispute resolution process in the document itself says that borrowers can bring federal law claims. What the borrowers chose to do was completely ignore the tribal dispute resolution process, which would have served as a gatekeeping function and go directly to federal court. The cases that are cited, and we pointed this out in our brief, the cases that are cited by the appellees, all involved matters where they were trying to eliminate federal law as opposed to a state law, federal law confluence. And we pointed out in our reply why the cases are distinguishable. Notwithstanding that language, when the case is determined either in the resolution process or if it went to a tribal court, what requirement is there that they actually follow federal law? Is it tribal law, the supreme and only authority here? Well, we believe that as a first cut, yes, that probably would be. But we didn't even foreclose that right. In other words, the tribe said you can still bring a federal action. It basically the resolution process is where to engage the Supreme Court. It just says other applicable federal law. And it says in the tribal dispute resolution process that they can bring federal claims. It doesn't specify what they are. I would like to write. I do need to rebut one thing, though, that's very important here. Let me ask you this first. The agreement says that it's subject solely and exclusively to the tribal law and the jurisdiction of the tribe. And it is the sole and exclusive authority for resolving disputes or claims arising from this agreement. So how do you get the federal court from there? Well, because it says in another section that other applicable federal law is it's applicable. And the reason I get there is, again, you've got to take the contracts as a whole. The tribal dispute resolution process. That goes to my original question. Right. So it sounds like to me the language authorizes a party to raise a federal claim. But it doesn't obligate any of the tribal authorities to follow it. That question, I don't know the answer to that. I'm going to be candid with the court. I'm not sure the interplay, because we haven't. That issue hasn't been litigated. I would like, though, in my limited time, just to go back to the issue again, is that the only way we got to these alleged new evidence. And we allege there was no new evidence. We it was basically a declaration of Miss P that was put in. But keep in mind, they undertook discovery against involving the tribe after the mandate was issued. That never should have happened in the first place. So basically, it creates this never ending universe of new facts and new law. And they're obviously in a favorable court where you're going to be in a situation. Oh, go take evidence. They should have been dismissed with prejudice immediately. That issue was raised. They weren't dismissed. And that now put my client in a very tenuous position. But how would that have prevented them from taking evidence against a non-party, even if they had been dismissed? Well, they could have taken evidence against a non-party, but they took it as a party discovery. And again, that's also a different protocol. But, yes, they could have taken they could have entertained discovery against the then defendants. But again, that in and of itself, having the defendants in the case was improper. And again, the only basis you have to find new evidence. And there was no new evidence to justify ignoring this court's findings. What counsel argues is almost circular. They're saying in the first opinion, you just affirmed Judge Payne's findings. And, you know, so that was fine. But they didn't allege in the first appeal that Judge Payne's findings, the findings that they're now contesting, were in error. They're saying, oh, we're going to kind of lay behind the log, let those go up. The appellate court confirms that it goes back down. Now we're going to go back to Judge Payne, reopen the case, reopen evidence. And now we have this new evidence. And all of a sudden, there's a misrepresentation, which completely alters the scope of this case. And I did want to make mention, because I've heard counsel say this is the issue or that's the issue. There are three discrete issues which are before the court today. And they're in the briefing. And I know we have limited time. But mandate was one. Predominance was the other. And the third is the waiver doctrine. But, again, I think if you look at our case law, because these loans are different, the loans in the other cases, for example, like the cash call cases, that was where the non-tribal defendant purchased loans from the tribe and then collected on those loans. There was no factual dispute here anywhere in the record that Mr. Martorello either originated the loans in question, serviced the loans in question, or collected on the loans in question. That's what distinguishes the facts of this case from the other cases cited by the appellees where there was a finding of a waiver doctrine because of the nature of the underlying contracts themselves. I see I'm out of time. Does the court have any additional questions? Thank you for your time, Your Honors. Thank you, Mr. Gibbons. And thank you, Mr. Wessler. Thank you both for your assistance in this case. We can't come down and greet you, but know that we appreciate your presence and we wish you well. Thank you so much. We'll proceed to our next case.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz